**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:16-cr-00259-TWP-MJD-1 |
| | ) | |
| WILLIE FERRELL, | ) | |
| | ) | |
| Defendant. | ) | |

**ENTRY DENYING MOTION FOR ORDER OF COMPASSIONATE RELEASE**

This matter is before the Court on Defendant Willie Ferrell's ("Ferrell") Motion for Order

of Compassionate Release, ([Filing No. 226](#)), filed pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), as

amended by § 603 of the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, 5239 (2018).

Ferrell asks the Court to reduce his sentence of imprisonment to time served because of the

Coronavirus pandemic.  For the reasons explained below, the motion is **denied.**

## I.   BACKGROUND

On March 15, 2019, Ferrell pled guilty to one count of Conspiracy to Possess with Intent

to Distribute and to Distribute 5 Kilograms or More of Cocaine.  ([Filing No. 177](#).)  His advisory

guideline sentencing range was 168-210 months imprisonment.  He was sentenced to a downward

departed term of 130 months imprisonment. ([Filing No. 182 at 2](#).) Ferrell is incarcerated at Federal

Correctional Institution Milan ("FCI-Milan") in Michigan.  *Id.*  His projected release date is April

30, 2026. *Id.*

Prior to sentencing, a Presentence Investigation Report ("PSR") was prepared.  (Filing No.

172.) During the sentencing hearing, neither Ferrell nor his counsel had any objections to Ferrell's

criminal history.  The PSR shows that Ferrell has Ferrell has an extensive criminal history dating

back to his youth.  When he was 16 years old, he broke into a home armed with a firearm. (Filing No. 172 at § 32).  As an adult, he was convicted four times in state court before committing the offense for which he is currently imprisoned.  In 1995, Ferrell was convicted of dealing cocaine. (Filing No. 172 at § 34.)  During the sale that led to his arrest, a person approached Ferrell and advised him not to sell cocaine to the customer because she was a "narc."  Ferrell then grabbed the cocaine from her and fired a gun at the customer.  *Id.*  In 2005, Ferrell was convicted of sexual misconduct with a minor.  *Id.* at § 35.  In this case, the 15-year-old victim reported that 26 year-old Ferrell came to her home after they had several telephone conversations and she got into his vehicle to talk to him. Ferrell pulled her pants down to her knees and penetrated her vagina, after she told him she did not want to have sexual intercourse with him.  He then sat back down in the driver's seat and told her to perform oral sex on him.  As a result of this offense, the victim underwent surgery to repair a tear in her vaginal wall.  *Id.*  In 2011, Ferrell was convicted of participating in a corrupt business influence.  *Id.* at § 37.  He was on probation for that conviction when he committed the offense for which he is imprisoned.  *Id.*  Finally, in 2012, Ferrell was convicted of receiving stolen property.  *Id.* at § 36.[1]

Ferrell was arrested for the current offense on November 3, 2016.  (Filing No. 159 at ¶ 20(b).)  When police vehicles arrived, he ran from the scene and was apprehended by a police canine.  *Id.* at ¶ 20(e).  On November 18, 2016, Magistrate Judge Dinsmore granted the Government's motion to detain Ferrell pending trial.  (Filing No. 37.)  The Magistrate Judge determined that no condition or combination of conditions of release would reasonably assure the

---

[1] Ferrell also has numerous arrests that were either dismissed or found not true. Those matters include arrest for criminal recklessness (age 16), carrying a handgun without a license (age 17), Attempted Murder (age 17), Dealing in Cocaine (age 17), and carrying a handgun without a license.  Also, as an adult, Ferrell was arrested twice for domestic battery and those charges were dismissed on both occasions.

safety of any other person or the community or that Ferrell would appear for trial.  *Id.* at § III.  In addition to other factors, the Magistrate Judge considered Ferrell's history of violence and using weapons; the fact that he operated the cocaine conspiracy while on probation; and the fact that he attempted to flee from police to avoid arrest on November 3, 2016.  *Id.*

In explaining the basis for Ferrell's sentence, the undersigned made the following statements:

- The nature and circumstances of this offense are quite serious.  Filing No. 200 at 65:24–25.

- [T]he defendant distributed huge, huge amounts of controlled substances in this community, 20 kilograms of cocaine and 10 kilograms of heroin, between 2015 and the date of his arrest in November of 2016.  *Id.* at 66:13–16.

- Ferrell was on probation in Marion County for the corrupt business influence conviction at the time that he committed the instant offense.  *Id.* at 66:25–67:2.

- This defendant testified that he resumed taking—doing drug activities to maintain his image and care for his children, and I believe he now realizes what an awful decision that was. This drug trafficking is not only dangerous, but it sets an extremely poor example for your children. The defendant failed to consider that his decision to distribute these awful drugs would have drastic consequences, not only for his 17 children and himself, but for all of the people in this community to whom he distributed these awful drugs for a period of two years. And these two drugs, cocaine and heroin, are highly addictive, they're destructive drugs, they ravage communities, they breed violence, they destroy families.  *Id.* at 69:20–70:6

On May 15, 2020, counsel moved for appointment in order to prepare and submit a Motion for Compassionate Release and counsel appeared on Ferrell's behalf on that same date. (Filing No. 225.)  In his Motion, counsel argues the highly transmissible and dangerous Coronavirus poses a severe threat of death to individuals with underlying illnesses. Given Ferrell's underlying coronary health issues, he is exceptionally vulnerable to fatality should he contract this deadly disease. Therefore, these circumstances have created "extraordinary and compelling" reasons to grant a compassionate release.

The Government opposes compassionate release, arguing that Ferrell does not present extraordinary and compelling circumstances justifying such relief and that he remains a danger to the community. (Filing No. 228).  The Government points out that Ferrell's criminal record for violent offenses began when he was just 13 years old (true finding for battery), and in this case, he was convicted as the lead defendant in a high volume heroin and cocaine trafficking conspiracy.

Concerning his medical conditions, the Government argues that Ferrell's asplenia (lack of a spleen due to one of the shootings in his past) and hypertension existed while he was committing the criminal conduct for which he has been convicted, the conditions did not stop Ferrell from drug trafficking, and were duly considered by the Court in the sentencing.  (Filing No. 228 at 8.) They also assert that "medical records submitted by the Defendant demonstrate that it is mild (… enough that Defendant routinely declines to take his medication for the condition.)".  *Id.* at 6.  The Government argues that as unfortunate as Ferrell's conditions may be, he does not show that his asplenia, hypertension, or prediabetes "substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility," as required by U.S.S.G. §1B1.13, Application note 1(A)(ii).  And, in light of the significant protective measures taken by the Bureau of Prisons ("BOP") to control the spread of the virus, the Government contends that Ferrell's medical conditions do not constitute an "extraordinary and compelling" reason warranting a reduction of his sentence.

## II.   LEGAL STANDARDS

18 U.S.C. § 3582(c) provides in relevant part:

[T]he court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions

4

that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—

(i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission . . . .

18 U.S.C. § 3582(c)(1)(A).

On April 30, 2020, Ferrell submitted a request for a reduction in sentence to the Warden at FCI – Milan; the Warden denied this request on May 1, 2020.  (Filing No. 226, Exh. C.)   The Warden denied the request stating that Ferrell did not meet the  criteria provided in BOP Program Statement 5050.50.  *Id.*  Based on this record, the Government concedes that Ferrell "has exhausted his administrative remedies." Thus, the Court concludes that Ferrell has exhausted his administrative remedies, and the Government has waived any further exhaustion. *See United States v. Cox*, 2020 WL 1923220, at *3 (S.D. Ind. Apr. 21, 2020) (exhaustion requirement in § 3582(c)(1)(A) is not jurisdictional, and the Government can waive it); *United States v. Jackson*, No. 2:15-cr-00013-JMS-CMM-1, Dkt. 137 (S.D. Ind. Apr. 28, 2020) (same).

Congress directed the Sentencing Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples."  28 U.S.C. § 994(t).  In response to this directive, the Sentencing Commission promulgated a policy statement regarding compassionate release under § 3582(c), contained in United States Sentencing Guidelines ("U.S.S.G.") § 1B1.13 and the accompanying Application Notes.  While that particular policy statement has not yet been updated to reflect that defendants (and not just the BOP) may move for compassionate release,[2] courts have turned to

---

[2] Until December 21, 2018, only the BOP could bring a motion for sentence reduction under § 3582(c)(1)(A). The First Step Act of 2018, which became effective on December 21, 2018, amended § 3582(c)(1)(A) to allow defendants to bring such motions directly, after exhausting administrative remedies.  *See* 132 Stat. at 5239 (First Step Act § 603(b)).

U.S.S.G. § 1B1.13 to provide guidance on the "extraordinary and compelling reasons" that may warrant a sentence reduction. *E.g.*, *United States v. Casey*, 2019 WL 1987311, at *1 (W.D. Va. 2019); *United States v. Gutierrez*, 2019 WL 1472320, at *2 (D.N.M. 2019); *United States v. Overcash*, 2019 WL 1472104, at *2-3 (W.D.N.C. 2019). There is no reason to believe, moreover, that the identity of the movant (either the defendant or the BOP) should have any impact on the factors the Court should consider.

As provided in § 1B1.13, consistent with the statutory directive in § 3582(c)(1)(A), the compassionate release analysis requires several findings. First, the Court must address whether "[e]xtraordinary and compelling reasons warrant the reduction" and whether the reduction is otherwise "consistent with this policy statement." U.S.S.G. § 1B1.13(1)(A), (3). Second, the Court must determine whether Ferrell is "a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 3142(g)." U.S.S.G. § 1B1.13(2). Finally, the Court must consider the § 3553(a) factors, "to the extent they are applicable." U.S.S.G. § 1B1.13.

Subsections (A)-(C) of Application Note 1 to § 1B1.13 identify three specific "reasons" that qualify as "extraordinary and compelling": (A) terminal illness diagnoses or serious conditions from which a defendant is unlikely to recover and which "substantially diminish[]" the defendant's capacity for self-care in prison; (B) aging-related health decline where a defendant is over 65 years old and has served at least ten years or 75% of his sentence, whichever is less; or (C) certain family circumstances. U.S.S.G. § 1B1.13, Application Note 1(A)–(C). Subsection (D) adds a catchall provision for "extraordinary and compelling reason[s] other than, or in combination with, the reasons described in subdivisions (A) through (C)."[3] *Id.*, Application Note 1(D).

---

[3]The catchall provision provides, "[a]s determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C)." U.S.S.G. § 1B1.13, Application Note 1(D). This policy statement has not been amended

Section 3142(g) is the provision outlining the factors the Court must consider in determining whether a defendant should be detained pending trial. In turn, § 3142(g) provides:

> **(g) Factors to be considered.—**The judicial officer shall, in determining whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community, take into account the available information concerning--
>> **(1)** the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>> **(2)** the weight of the evidence against the person;
>> **(3)** the history and characteristics of the person, including--
>>> **(A)** the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>>> **(B)** whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>> **(4)** the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

## III.  DISCUSSION

A compassionate release is an extraordinary and rare event, even during the present pandemic. Chronic conditions that can be managed in prison are not a sufficient basis for

---

since the passage of the First Step Act to reflect the fact that defendants can now file motions directly in district court. "Accordingly, a majority of district courts have concluded that the 'old policy statement provides helpful guidance, [but] ... does not constrain [a court's] independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3852(c)(1)(A).'" *United States v. Rodriguez*, __ F.Supp.3d __, 2020 WL 1627331, at *4 (E.D. Penn. 2020) (quoting *United States v. Beck*, 425 F.Supp.3d 573, 579 (M.D.N.C. 2019)) (collecting cases). Such courts conclude that they have the "discretion to assess whether [a defendant] presents 'extraordinary and compelling reasons' for his release outside of those listed in the non-exclusive criteria of subsections (A)-(C) of the old policy statement." *Id.* at *6; *see also United States v. McCarthy*, 2020 WL 1698732, at *4 n.5 (D. Conn. Apr. 8, 2020). Other courts have held that they must follow the policy statement as it stands and, thus, that the Director of the BOP is the ultimate arbiter of what counts as "extraordinary and compelling" under the catchall provision. *See, e.g.*, *United States v. Lynn*, 2019 WL 3805349, at *2–4 (S.D. Ala. Aug. 13, 2019). The Court need not resolve that debate, though, because Martin's Motion is due to be denied even if the Court assumes that the policy statement is not binding and that it has the discretion to determine what constitutes an "extraordinary and compelling reason" for a sentence reduction.

compassionate release." *United States v. Ayon-Nunez*, 2020 WL 704785, at *2–3 (E.D. Cal. Feb. 12, 2020). Ferrell is presently 43 years old. In support of his Motion for Compassionate Release, he represents that he suffers from conditions which affect his immunity – his spleen was removed in 2005 due to a gunshot wound, he takes medication for hypertension, he is prediabetic, and he has had a collapsed lung – all conditions that make him especially vulnerable to COVID-19 which presents an extraordinary and compelling reason for his release. As directed by statute, the Court will first address whether extraordinary and compelling reasons warrant the reduction, before turning to whether Ferrell is a danger to the safety of any other person or to the community.

## A.   <u>Extraordinary and Compelling Reasons</u>

Ferrell does not suggest that Subsections (A)-(C) of Application Note 1 to § 1B1.13 apply to him. Thus, the question is whether the catchall provision for extraordinary and compelling reasons applies in this case.

The Centers for Disease Control and Prevention ("CDC") has recognized that people suffering from "serious heart conditions," including "heart failure, coronary artery disease, congenital heart disease, cardiomyopathies, and pulmonary hypertension," may be at higher risk from severe illness from COVID-19.[4] But there is no evidence that Ferrell suffers from such a "serious heart condition." Instead, he has essential (primary) hypertension that is well-controlled by medication.[5]

---

[4] *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk. html#serious-heart-conditions (last visited June 16, 2020).

[5] The Court recognizes that the CDC has recently issued guidance stating that hypertension has been associated with increased illness severity and adverse outcomes. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/clinical-guidance-management-patients.html (last visited June 16, 2020). But association is not necessarily causation, and the CDC has not yet identified hypertension (no matter how mild, and no matter how well-controlled) in its general list of conditions that put people at risk for severe COVID-19 symptoms. *See* https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html (last visited June 16, 2020). Instead, it continues to identify "serious heart conditions" as being the risk factor. *Id.* On this record, the Court cannot say that Ferrell's well-controlled hypertension is a "serious heart condition."

Ferrell also contends that he suffers from pre-diabetes and that the CDC has stated that this indicates that he is at high risk for serious complications from COVID-19. The Government persuasively argues that the condition of being pre-diabetic is by itself not a serious medical condition that justifies compassionate release. "Indeed, while diabetes is on the CDC's list of high-risk medical conditions, pre-diabetes is not." *United States v. Livingston*, 2020 WL 1905202 (E.D.N.Y. Apr. 17, 2020); *see also United States v. White*, 2020 WL 2733891 (E.D. Mich. May 26, 2020) ("Defendant's underlying conditions [of high cholesterol and pre-diabetes] do not put him at a high risk of a dire outcome or death from COVID-19."); *United States v. Roe*, 2020 WL 3026456 (E.D. Mich. June 5, 2020) ("Defendant's underlying conditions [of pre-diabetes and obesity] do not put him at a higher risk of a dire outcome or death from COVID-19."). Therefore, pre-diabetes is not a condition that supports Ferrell's request for compassionate release.

Ferrell's spleen condition is more serious. The Government argues that no reported decisions indicate that a request has been granted in circumstances comparable to Defendant's, and courts elsewhere have denied similar motions. (Filing No. 228 at 13-14.) They point the Court to *United States v. Holroyd*, 2020 WL 2735554 (DDC, May 26, 2020) (defendant's asplenia and hypertension do not present 'extraordinary and compelling reasons' for reducing his sentence to time served); and *United States v. Wiseman*, 2020 WL 2487199 (M.D. Tennessee, May 14, 2020) (defendant's asplenia not a basis to release defendant from BOP).

In contrast, Ferrell argues his medical conditions do make him highly vulnerable to COVID-19 and his asplenia and having a collapsed lung in the past puts him at a greater risk of severe illness should he contract the virus. In his reply, Ferrell notes that the National Health Service, the United Kingdom's healthcare system, has added persons suffering from asplenia to their shielding list. That said, the Court need not make a determination based on these conditions,

because as explained below, Ferrell's release presents a danger to the safety of others and the community.

**B.**    **Danger to the Safety of Other and the Community**

Each of the four factors in § 3142(g) weighs in favor of finding that Ferrell presents a danger to the community.  Most obviously, regarding the first factor, the nature and circumstances of the offense charged, including whether the offense is a crime of violence or a controlled substance.  Ferrell's offense involved a controlled substance.  He characterizes his crime as non-violent, but the fact that his crime was non-violent does not mean that he did not harm the community or that he would not pose a danger if released.  Ferrell distributed or caused to be distributed in the community, at least 20 kilograms of cocaine and 10 kilograms of heroin, between 2015 and the date of his arrest in November of 2016.

Regarding the second factor, the weight of the evidence against Ferrell is overwhelming. The factual basis for his guilty plea describes him maintaining a warehouse for trafficking drugs; coordinating and receiving a shipment of approximately 5 kilograms of cocaine at that warehouse; and attempting to flee the scene once law enforcement vehicles arrived.  (Filing No. 159 at ¶ 20.) He admitted to trafficking cocaine and heroin for over a year before that incident.  *Id.* at ¶ 20(g).

As to the third factor – history and characteristics – Ferrell was on probation for his state court corrupt business influence conviction the entire time he was trafficking cocaine and heroin. (*See* Filing No. 172 at § 37.)  Additionally, Ferrell has an extensive and violent criminal history. That history includes firing a handgun during a drug transaction and engaging in sexual misconduct that injured a minor victim.  (*See id.* at §§ 34–35.)

Looking to the fourth factor, the Court determines that Ferrell would present a serious danger to the community if released.  In the past, probation has not deterred Ferrell from working

in the drug trade. Ferrell does not dispute any of the facts discussed above. Instead, he notes that he has completed educational programs in the last year that will enable him to find gainful employment and disincentivize recidivism. (*See* Filing No. 226 at 21; Filing No. 226-4.) He also states that he has arranged employment at a printing shop. (Filing No. 226-2.) These are positive developments. But when looking at Ferrell's conduct while in BOP custody the Court must also consider that he was disciplined for possessing a hazardous tool and trying to destroy/dispose of an item during a search. (Filing No. 228-3.) Moreover, the BOP determined, and Ferrell has not disputed, that he remains a medium, not low, risk of recidivism upon his release. (Filing No. 228-1, Filing No. 229 at 5). These facts raise an unacceptable likelihood that, upon his release, Ferrell will return to criminal and violent enterprises.

Ferrell refers the Court to the March 30, 2020 decision *in United States v. Collins*, Crim. No. 10CCB-0336, ECF 1038 (Mar. 30, 2020), where a federal district court recently reduced the defendant's sentence to time served and ordered his immediate release. In *Collins*, the court acknowledged the extraordinary circumstances present in the community as a result of the COVID-19 pandemic and explained that Collins not only had an underlying health condition which made him more susceptible to the effects of the virus, but he was a non-violent drug offender who had already served a lengthy sentence and had been determined ready for community placement at the Veterans Of America facility. Here, Mr. Ferrell has a history of violence, he has only served approximately 44 months of a 130 month sentence and the BOP has explicitly determined that he remains a medium risk for recidivism.

As noted earlier in this Entry, in November 2016, following Ferrell's arrest, the Magistrate Judge determined that no condition or combination of conditions would reasonably assure the community's safety if Ferrell was released while awaiting trial. Too little has changed since then

to warrant a different result. Although the Court acknowledges Ferrell's medical conditions and the threat they may pose to his safety in prison because of the Coronavirus, there also is no indication that his conditions have left him too infirmed to return to his previous criminal activities if he is released. Indeed, Ferrell focuses primarily on his asplenia, which he experienced for roughly ten years before entering the drug enterprise for which he is currently in prison.

For all these reasons, Ferrell's personal characteristics do not convince the Court that he is no longer a danger to the safety of others or the community, so regrettably, his motion must be denied.

### III.   CONCLUSION

For the reasons stated above, Ferrell's Motion for Order of Compassionate Release, (Filing No. 226), is **DENIED**.

**SO ORDERED.**

Date:  7/8/2020

TANYA WALTON PRATT, JUDGE
United States District Court
Southern District of Indiana

DISTRIBUTION:

Mario Garcia
BRATTAIN MINNIX GARCIA
mario@bmgindy.com

Michelle Patricia Brady
UNITED STATES ATTORNEY'S OFFICE
michelle.brady@usdoj.gov

Shelese M. Woods
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
shelese.woods@usdoj.gov